UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ADAM MALIK,

               Plaintiff,

    v.

DEPARTMENT OF HOMELAND
SECURITY, et al.,

               Defendants.

Civil Action No. 22-0698 (CRC)

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.      Defendants Have Not Acted in Bad Faith, and Discovery is Unwarranted ........................ 1

II.     Defendants Conducted Adequate Searches .......................................................... 5

III.    Defendants Applied Withholdings Appropriately .............................................. 9

IV.     Plaintiff's Submissions Suffer from Several Evidentiary Issues ....................... 12

V.      Additional Information for the Court .............................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Am. Mgmt. Servs., LLC v. Dep't of Army*,
842 F. Supp. 2d 859 (E.D. Va. 2012) ................................................................. 10, 11

*Amnesty Int'l USA v. CIA*,
728 F. Supp. 2d 479 (S.D.N.Y. 2010) ................................................................. 10, 11

*CLEAR v. Customs & Border Prot.*,
Civ. A. No. 19-7079, 2022 WL 16636686 (E.D.N.Y. Nov. 2, 2022) ........................... 13

*DiBacco v. Dep't of Army*,
926 F.3d 827 (D.C. Cir. 2019) ................................................................................... 14

*Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*,
608 F.2d 1381 (D.C. Cir. 1979) ................................................................................... 3

*Hodge v. FBI*,
703 F.3d 575 (D.C. Cir. 2013) ........................................................................ 8, 10, 11

*In re Clinton*,
973 F.3d 106 (D.C. Cir. 2020) ............................................................................ passim

*Iturralde v. Comptroller of Currency*,
315 F.3d 311 (D.C. Cir. 2003) ..................................................................................... 7

*Kay v. FCC*,
976 F. Supp. 23 (D.D.C. 1997) .................................................................................. 14

*Kissinger v. Reps. Comm. for Freedom of the Press*,
445 U.S. 136 (1980) ................................................................................................ 2, 8

*Mead Data Cent., Inc. v. Dep't of Air Force*,
566 F.2d 242 (D.C. Cir. 1977) ........................................................................... 10, 11

*Nation Magazine v. U.S. Customs Serv.*,
71 F.3d 885 (D.C. Cir. 1995) ...................................................................................... 1

*Pub. Emps. for Env't Resp. v. U.S. Sect., Int'l Boundary & Water Comm'n, U.S.-Mex.*,
740 F.3d 195 (D.C. Cir. 2014) ..................................................................................... 4

*SafeCard Servs., Inc. v. SEC*,
926 F.2d 1197 (D.C. Cir. 1991) ............................................................................... 2, 8

*Shapiro v. Dep't of Just.*,
40 F.4th 609 (D.C. Cir. 2022) ..................................................................................... 1

*Sussman v. U.S. Marshals Serv.*,
494 F.3d 1106 (D.C. Cir. 2007) ........................................................................... 12

*Weisberg v. Dep't of Just.*,
745 F.2d 1476 (D.C. Cir. 1984) ................................................................... 4, 8, 15

**RULES**

Fed. R. Civ. P. 56 ................................................................................................ 12

**REGULATIONS**

36 C.F.R. § 1227.10 ............................................................................................. 18

36 C.F.R. § 1233.20 ............................................................................................. 18

5 C.F.R. § 293.307 ............................................................................................... 17

5 C.F.R. § 293.308 ............................................................................................... 17

Defendants respectfully reply in support of their motion for summary judgment and oppose Plaintiff Adam Malik's cross motion for summary judgment.

## I.    Defendants Have Not Acted in Bad Faith, and Discovery is Unwarranted

Plaintiff has largely failed to respond to Defendants' arguments in his cross motion and opposition. Instead, relying on conspiracies and a lifetime of personal grievances, Plaintiff argues in conclusory fashion that Defendants acted in bad faith, so the Court should grant discovery. *See generally* Pl.'s Cross Mot. & Opp'n ("Pl.'s Opp'n"), ECF No. 37. To the extent that Plaintiff does, in fact, mention a document or comment on the agencies' obligations under FOIA,[1] nothing Plaintiff says supports a reasonable inference of bad faith such that the Court should order discovery into the agencies' responses to his requests or, as Plaintiff puts it, "the government's motives." *Id.* at 12.

The D.C. Circuit has "repeatedly made clear that 'discovery in a FOIA case is rare' and courts should generally order it only 'where there is evidence—either at the affidavit stage or (in rarer cases) before—that the agency acted in bad faith in conducting the search.'" *Shapiro v. Dep't of Just.*, 40 F.4th 609, 615 (D.C. Cir. 2022) (quoting *in re Clinton*, 973 F.3d 106, 113 (D.C. Cir. 2020)). "And even where [the D.C. Circuit has] found an agency's affidavits to be inadequate to support summary judgment, [the D.C. Circuit has] held that the appropriate remedy is usually to allow the agency to 'submit further affidavits' rather than to order discovery." *Id.* (quoting *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 892 (D.C. Cir. 1995)).

Here, Plaintiff's allegations of bad faith are meritless. For example, Plaintiff argues often that records should exist but were not produced, and that is evidence of bad faith. *See, e.g.*, Pl.'s

---

[1]     Defined terms used herein are intended to have the same meaning as those used in Defendants' motion (ECF No. 31).

Mot. at 21 ("Yet even through this FOIA litigation, CBP has failed to turn over this video through a FOIA request despite its existence."). But it is well established that FOIA "does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained." *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980); *see also SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) ("Nor is the [agency] required to recreate or to reacquire a document that it no longer has. . . . If the agency is no longer in possession of the document, . . . then the agency is not improperly withholding that document[.]"). Thus, to the extent that an agency did not produce a document that Plaintiff believes should exist, any such lack of production is not evidence of bad faith. In fact, it is not even evidence that the agency failed to comply with FOIA.

Plaintiff's allegations of bad faith sweep across almost every action related to this lawsuit. He argues repeatedly, for example, the way Defendants applied redactions shows bad faith. *See, e.g.*, Pl.'s Opp'n at 18 ("Further demonstrating USCIS's bad faith, among the documents that they have provided are items where entire pages (indeed entire documents) are redacted."). He also argues differences in responses to FOIA requests from over a decade ago compared to the responses in this case show bad faith. *See, e.g.*, *id.* at 16 (arguing bad faith because a FOIA request to USCIS for his A-file in 2008 yielded 282 pages but the request in this case yielded 314 pages, out of order).

In fact, he argues things that have no relation to this FOIA suit whatsoever are evidence of bad faith such that the Court should order discovery. *See, e.g.*, *id.* at 21-22 (arguing bad faith because Plaintiff allegedly received documents through discovery in a different case in the Northern District of Texas that he did not get in this FOIA case); *id.* at 22 (arguing bad faith because Plaintiff's Global Entry was revoked); *id.* at 24 (arguing bad faith about the government

generally because the State Department, which is not a Defendant in this case, allegedly has "been providing law enforcement and other agencies unfettered access to data collected through passport applications"); *id.* at 13 (arguing bad faith because Plaintiff believes the FBI used his "closed employment application to harass his friends and neighbors as a way of teaching junior agents how to conduct better investigations"); *id.* at 16 (arguing bad faith because Plaintiff believes his former boss and "ex-wife were coordinating to harm a common enemy: Plaintiff"); *id.* at 26 (arguing bad faith in this FOIA case because in a different FOIA case in the Eastern District of New York, the court denied summary judgment for all parties).

Plaintiff's arguments about bad faith miss the mark. Contrary to Plaintiff's assertions, it is well established in a FOIA case that the "sufficiency of the affidavits is not undermined by a mere allegation of agency misrepresentation or bad faith." *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979). Agency affidavits are not undermined, further, "by past agency misconduct in other unrelated cases," assuming there was any misconduct at all. *Id.*; *see also Clinton*, 973 F.3d at 116-17 (finding district court abused its discretion when it ordered discovery in a FOIA case after finding the State Department acted in bad faith because of about thirty emails the FBI produced in unrelated litigation, which the State Department "failed to fully explain").

Contrary to Plaintiff's position, agency affidavits, like the ones submitted in this case, are "accorded a presumption of good faith and cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *Clinton*, 973 F.3d at 113 (citation omitted). While Plaintiff may be unsatisfied with Defendants' responses to his FOIA requests, it is "elementary that an agency responding to a FOIA request is simply required to conduct a search *reasonably calculated* to uncover all *relevant documents*.'" *Id.* at 116 (emphasis in original)

(cleaned up). In a FOIA case, the "issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). An agency's "failure to turn up every responsive document in an initial search is not necessarily evidence of bad faith." *Pub. Emps. for Env't Resp. v. U.S. Sect., Int'l Boundary & Water Comm'n, U.S.-Mex.*, 740 F.3d 195, 200 (D.C. Cir. 2014).

Thus, although Plaintiff continually accuses Defendants of bad faith in conclusory fashion, relying on conspiracies and personal grievances from years ago, the undisputed evidence shows that Defendants have not acted in bad faith. To the contrary, Defendants have complied with their obligations under FOIA.

Lastly, even assuming without conceding that there was any bad faith in this case—of which there was not—it bears mentioning that the relief Plaintiff could obtain is not as expansive as he seems to request. While Plaintiff repeatedly states that the Court should order discovery into "the government's motives," he does not elaborate on what discovery he seeks. *See, e.g.*, Pl.'s Opp'n at 12 ("The record in this case demonstrates that discovery is appropriate as to both the question of whether the defendants have adequately searched for responsive documents and as to the government's motives."); *id.* at 14-15 ("And the Court should order discovery into the FBI's motives for its deficient response, because the outrageous conduct by the FBI smacks of misconduct."). Considering how Plaintiff describes his distrust in the government, it appears he may desire discovery into matters having nothing to do with this FOIA case. But any such discovery would be wholly improper. *Clinton*, 973 F.3d at 114 ("The mere suspicion of bad faith on the part of the government cannot be used as a dragnet to authorize voluminous discovery that is irrelevant to the remaining issues in a case."). Whatever Plaintiff believes about "the

government's motives," discovery would be substantially limited to the actions of the individuals who conducted the search. As the D.C. Circuit explained in *Clinton*:

> Discovery in FOIA cases is not a punishment, and the district court has no basis to order further inquiry into Secretary Clinton's state of mind, which could only conceivably result in relief Judicial Watch has already received—discovery. Furthermore, a bad-faith inquiry in a FOIA context is only relevant as it goes to the actions of the individuals who conducted the search. Since there is no evidence Secretary Clinton was involved in running the instant searches—conducted years after she left the State Department—and since she has turned over all records in her possession, the proposed deposition topics are completely attenuated from any relevant issue in this case.

*Clinton*, 973 F.3d at 115-16 (citations omitted).

The Court need not consider any theoretical scope of discovery in this case, however, because Plaintiff has failed to establish the threshold issue—bad faith by Defendants. Therefore, discovery is unwarranted.

## II.    Defendants Conducted Adequate Searches

As indicated above, Plaintiff largely failed to respond to Defendants' arguments in support of summary judgment. Rather than repeat the same arguments from their opening brief, declarations, or *Vaughn* indexes, Defendants simply reincorporate those materials here and respond to the specific points Plaintiff addressed in his opposition.

As far as Defendants can understand, Plaintiff argues the FBI's search was inadequate because of two sets of documents: (1) documents related to an application to become a Special Agent in 2005 and (2) documents related to the "FBI's decision to use the Plaintiff's closed employment application to harass his friends and neighbors as a way of teaching junior agents how to conduct better investigations." *See generally* Pl.'s Opp'n at 12-15. Plaintiff claims that he received a letter dated April 23, 2008, saying that he could submit a FOIA request to discover the reasons why he was not selected for the Special Agent position. *Id.* at 12. He alleges that the FBI was able to locate at least one letter from December 22, 2005, so there must be others from back

then, despite prior government counsel indicating otherwise. *Id.* at 14 ("Thus, it emphatically is not the case, as repeatedly represented by former AUSA Moustakas, that employment application records from 2005 would not exist anymore. They do exist. They are being hidden."). He says he learned from a friend that the FBI was using his closed employment application to harass his friends, and the FBI should have produced documents related to the seemingly sham background investigation. *Id.* at 13.

Regarding USCIS's searches, as far as Defendant can understand, Plaintiff argues they were deficient because: (1) Plaintiff's A-file has changed over the years, (2) USCIS did not produce documents explaining why a security investigation was never completed, and (3) the Official Personnel Folder he received from NARA is missing documents like "annual evaluations, awards, records of courses taken, EOD (Entry on Duty) letters, retirement plans and statements, accident reports, final determination of Plaintiff's security and background investigation and various other pertinent documents," so USCIS must still have them and did not adequately search for them. *See generally* Pl.'s Opp'n at 15-18. He attributes this to bad faith by USCIS, and more specifically, a "leadership clique that engaged in outright anti-Muslim and racist discrimination when Plaintiff was in that office." *Id.* at 17.

Regarding ICE's searches, to the extent that Plaintiff does respond to Defendants' arguments, Plaintiff provides only conclusory assertions that the records produced by NARA in this litigation in response to a request for his Official Personnel Folder are "missing substantial portions of Plaintiff's personnel file, his employment records at ICE, his background investigation, and the results thereof," so ICE must have performed a deficient search and must still have documentation that it is not turning over. Pl.'s Opp'n at 19-20. He references a "counterintelligence report" and states that it "boggles the mind, in the post-9/11 era, that something described as a

counter-intelligence report in the possession of a government agency has disappeared from ICE's possession." *Id.* at 20.

For CBP's searches, as far as Defendants' can understand, Plaintiff argues they were deficient because CBP failed to produce: (1) video that he believes exists and should not have been deleted, (2) documentation that he believes exists related to the revocation of his Global Entry, and (3) documentation he received through discovery in separate litigation in the Northern District of Texas that was not produced in this FOIA case. *See* Pl.'s Opp'n at 20-26. He generally alleges that CBP has a history of targeting immigration attorneys, which is why he believes he was targeted. *Id.* at 25 ("This targeting of immigration attorneys, like Plaintiff, is part of a larger pattern and practice of maintaining a 'secretive division' that 'uses some of the country's most sensitive databases to investigate the travel and financial records and personal connections of journalists, members of Congress and other Americans not suspected of any crime.'").

And for NARA, Plaintiff alleges that its search was deficient because his Official Personnel Folder did not include "crucial items such as: annual evaluations, awards, records of courses taken, EOD (Entry on Duty) letters, retirement plans and statements, accident reports, final determination of Plaintiff's security and background investigation and various other pertinent documents." *Id.* at 27. He calls NARA's response to his request "cartoonish." *Id.*

Simply put, nothing Plaintiff has said in his opposition creates a genuine dispute regarding the adequacy of any of Defendants' searches. In no way has Plaintiff demonstrated that Defendants' searches were not reasonably calculated to uncover all relevant documents. Instead, Plaintiff criticizes Defendants searches—not by how they were done—but by what they revealed, or what he believes they should have revealed. *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[T]he adequacy of a FOIA search is generally determined not by the

fruits of the search, but by the appropriateness of the methods used to carry out the search."). All he does is assert—and speculate—that documents must exist, and therefore Defendants performed an inadequate search if the documents he believes exist were not produced. This is grossly insufficient to create a genuine dispute to defeat summary judgment. *Clinton*, 973 F.3d at 113 ("[Agency] affidavits are to be accorded a presumption of good faith and cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" (citation omitted)). As the D.C. Circuit explained in *Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013):

> Here, because the sworn declarations from the FBI indicate that it conducted "reasonably calculated" searches, the burden is on Hodge to identify specific additional places the agency should now search. But Hodge has not identified any specific additional searches that he believes the FBI should have conducted. Hodge asserts that the FBI may possess additional responsive documents, but he offers no basis for concluding that those documents might exist. As we have said before, "[m]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search." Therefore, we reject Hodge's complaint about the alleged inadequacy of the search.

*Hodge*, 703 F.3d at 580.

As explained above, FOIA "does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained." *Kissinger*, 445 U.S. at 152. "If the agency is no longer in possession of the document, . . . then the agency is not improperly withholding that document[.]" *SafeCard Servs.*, 926 F.2d at 1201. An agency responding to a FOIA request is "simply required to conduct a search *reasonably calculated* to uncover all *relevant documents*.'" *Clinton*, 973 F.3d at 116 (citation omitted) (emphasis in original). In a FOIA case, the "issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg*, 745 F.2d at 1485.

Despite how much Plaintiff may believe other documents exist, he has not shown how Defendants' searches were inadequate. Defendants are entitled to summary judgment for their searches because they were reasonably calculated to uncover all relevant documents.

### III.    Defendants Applied Withholdings Appropriately

Plaintiff has largely ignored almost all of Defendants' arguments concerning their claimed exemptions set forth in their opening brief, declarations, and *Vaughn* indexes as well. Rather than repeat the same arguments, Defendants simply reincorporates those materials here and responds to the specific points Plaintiff addressed in his opposition, which appears to be only redactions pertaining to USCIS and CBP.

Regarding withheld information from USCIS, as far as Defendants can understand, Plaintiff only contests: (1) a document described as a "Memo for the Record," and (2) a document dated March 4, 2008. *See* Pl.'s Opp'n at 18-19. Both withholdings, however, were appropriate.

Although Plaintiff claims the "Memo for the Record" was withheld in full, the heading on the document, as referenced by Plaintiff, was released along with Plaintiff's name at the top of each page. This document is described in USCIS's *Vaughn* index. *See* USCIS Vaughn Index, ECF No. 31-4 at 61, 89-94. It was withheld based on Exemptions 5, 7(C), and 7(E). Plaintiff does not specifically address the exemptions applied to this document but simply argues that the document was improperly withheld in full. The description of the document as well as the basis for the redactions are fully explained which includes that the document is a non-final draft document.

The information contained in the draft memorandum has been redacted pursuant to Exemption 5 and the deliberative process privilege. The information is exempt as this privilege shields from public disclosure government records demonstrated to be pre-decisional in nature, but do not constitute or reflect the whole of the agency's final determination on the matter or otherwise dispenses with the issue under consideration in significant part. The general purpose of

the exemption is to prevent injury to the quality of agency decisions. More specifically, three policy purposes constitute the basis for this privilege: (a) to encourage open, frank discussions on matters between subordinates and superiors; (b) to protect against premature disclosure of proposed policies before they are finally adopted; and (c) to protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action. The privilege protects not merely documents, but also the deliberative process itself where exposure of that process would result in harm. *See* USCIS Vaughn Index, ECF No. 31-4 at 61-62. USCIS also determined that there would be foreseeable harm that would result if the information were to be released as it "would hinder the free flow of communication between employees in sharing their opinions and recommendations if they believed everything they state was to be publicly released." USCIS Vaughn Index, ECF No. 31-4 at 62.

Plaintiff contends that more should have been released claiming it is bad faith to redact every word including every comma, every period, every "if," "and," or "but." Pl.'s Opp'n at 18. But courts have held that agencies do not need to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260, 261 n.55 (D.C. Cir. 1977); *Am. Mgmt. Servs., LLC v. Dep't of Army*, 842 F. Supp. 2d 859, 885 (E.D. Va. 2012) (noting that agency is under no obligation to segregate "essentially meaningless words and phrases" for release), *aff'd*, 703 F.3d 724 (4th Cir. 2013); *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 529 (S.D.N.Y. 2010) (concluding that "forcing the CIA to re-process all of the records for the sole purpose of releasing various words and phrases would be a waste of time and resources.").

Regarding the second document Plaintiff contends was withheld in full dated March 4, 2008, this document is PDF 106, and is described on page 66 of USCIS's *Vaughn. See* USCIS Vaughn Index, ECF No. 31-4 at 66. This document was not withheld in full as information from the top of the document was released including the words "SAVE Program" which Plaintiff references in describing the document. *See* Pl.'s Opp'n at 18. This one-page document was withheld based on Exemptions 6 and 7(C). As explained in the *Vaughn*, this document relates to a third party and Plaintiff did not provide consent from the third party authorizing the release of the information. *See* USCIS Vaughn Index, ECF No. 31-4 at 66. "Thus, the disclosure would constitute a clearly unwarranted invasion of personal privacy" and "would cause foreseeable harm." *Id.* at 67.

Regarding withheld information from CBP, as far as Defendants can understand, Plaintiff only contests redactions on his Global Entry application and the renewal of his application. *See* Pl.'s Opp'n at 23. He argues that the documents were "heavily redacted." *Id.* He elaborates that even "the date of the revocation is redacted" and this "is further evidence of bad faith both in the FOIA process and in the motives of the government" because there "is no reasonable reason to redact the date of the revocation other than a weak attempt to hide the evidence that the revocation was, in fact, done by Sullivan as retaliation for the DFW incident the night before." *Id.*

But as stated above, courts have held that agencies do not need to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." *Mead Data Cent.*, 566 F.2d at 260, 261 n.55; *Am. Mgmt. Servs.*, 842 F. Supp. 2d at 885 (noting that agency is under no obligation to segregate "essentially meaningless words and phrases" for release), *aff'd*, 703 F.3d 724 (4th Cir. 2013); *Amnesty Int'l*, 728 F. Supp. 2d at 529 (concluding that "forcing the CIA to re-process all of

the records for the sole purpose of releasing various words and phrases would be a waste of time and resources.").

Additionally, as explained in the Suzuki declaration, CBP has "carefully reviewed the responsive records on a line-by-line and page-by-page basis to identify reasonably segregable, non-exempt information." Suzuki Decl. ¶ 70, ECF No. 31-2. "CBP has determined that there is no additional, meaningful, nonexempt information that may be reasonably segregated and released with disclosing information that warrants protection under a FOIA exemption." *Id.* "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). Plaintiff has not rebutted that presumption because of his disagreements with things like dates and the words "if," "and," or "but."

The Court should grant summary judgment for Defendants because they appropriately withheld exempt information.

## IV.    <u>Plaintiff's Submissions Suffer from Several Evidentiary Issues</u>

To obtain summary judgment, generally, a party asserting that a fact cannot be or is genuinely disputed must support the assertion. Fed. R. Civ. P. 56(c). If a party relies on affidavits or declarations, they "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* If the materials cited would not be admissible, an opposing party may object. *Id.* An opposing party may also show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Here, the materials Plaintiff submitted in support of his cross motion and opposition suffer from several evidentiary issues: (1) irrelevance, (2) hearsay, and (3) a lack of personal knowledge. Additionally, (4) the materials cited largely do not support the assertions Plaintiff makes.

Beginning with the first issue, most of what Plaintiff cites to support of his cross motion and opposition is irrelevant to this FOIA case. For example, Plaintiff argues because "records related to Richard Nixon's 1937 application process for a position as a special agent were retained (and made public) decades later," records related to his past employment applications must exist. *See* Pl.'s Opp'n at 14. He cites to a letter from Senator Ron Wyden where the senator alleged CBP "forensically examines and then saves data from 'less than 1,000' phones per year and stores the results, 'including text messages, call logs, contact lists, and in some cases, photos and other sensitive data in a central database,'" and that's what Plaintiff claims must have been done to his cell phone. *See* Pl.'s Opp'n at 23. He argues that the State Department, who is not a defendant in this case, "was recently learned to have been providing law enforcement and other agencies unfettered access to data collected through passport applications." Pl.'s Opp'n at 24. Simply put, none of these citations, regardless of whether they're true, have any relevance to whether Defendants complied with their FOIA obligations in this suit.

By way of further example, Plaintiff cites to a decision in the Eastern District of New York where a court ruled against all parties on summary judgment in a different FOIA case. *See* Pl.'s Opp'n at 26 (citing *CLEAR v. Customs & Border Prot.*, Civ. A. No. 19-7079, 2022 WL 16636686 (E.D.N.Y. Nov. 2, 2022)). Whatever CBP did in a different FOIA case is completely irrelevant to its responses in this FOIA case. Plaintiff also cites to documents he received through discovery in a different case in the Norther District of Texas that he did not receive in this FOIA case. *See* Pl.'s Opp'n at 21-22. Again, whatever occurred in a different case with different issues is irrelevant to this FOIA case. *See Clinton*, 973 F.3d at 116-17 (finding district court abused its discretion when it ordered discovery in a FOIA case after finding the State Department acted in bad faith because of about thirty emails the FBI produced in unrelated litigation, which the State Department "failed

to fully explain"); *Kay v. FCC*, 976 F. Supp. 23, 33 (D.D.C. 1997) ("[A]ssertions of bad faith must fail where the plaintiff has acquired documents through other means, such as formal discovery, because these procedures may differ from FOIA disclosure procedures.").

Moreover, much of what Plaintiff relies on is hearsay or wild speculation, and therefore Plaintiff does not have the personal knowledge to make the assertions that he is making. And while an agency declarant may rely on hearsay without running afoul of Rule 56, no such leniency exists for requesters attempting to dispute an agency's declaration. *See DiBacco v. Dep't of Army*, 926 F.3d 827, 833 (D.C. Cir. 2019) ("Moreover, although some of the information was relayed to [the agency declarant] by her subordinates, declarations in FOIA cases may include such information without running afoul of Rule 56.").

Here, Plaintiff cites to several instances that are plainly hearsay and cannot be used to support his arguments. For example, Plaintiff states sometime in the past he "received a phone call from a friend and former roommate still in the United States telling him that the FBI was contacting his former neighbors about an alleged background investigation for a job application." Pl.'s Opp'n at 13. He continues that he "contacted a friend and current FBI special agent . . . and learned . . . that the FBI was using the Plaintiff's obsolete employment application as a training device for junior agents to conduct investigations." Pl.'s Opp'n at 13. Plaintiff is surprised that no records have been produced relating to these accusations.

Ignoring for the moment all the other issues with relying on information like this to contest Defendants' searches, this information is plainly hearsay. Plaintiff, further, has no personal knowledge that these events ever even occurred, assuming they occurred at all. If they did occur, Plaintiff provides no foundation for his repeated allegations that records exist related to these events. Plaintiff's assertions that records exist pertaining to these alleged events but were never

produced lack the necessary reliable evidentiary support. And even assuming they did, as explained above, in a FOIA case, the "issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg*, 745 F.2d at 1485.

Plaintiff also states that he "learned from a former colleague that [a supervisor] had requested Plaintiff's A-file under the guise of needing it to facilitate his ex-wife's immigration case," but in reality, the former supervisor and "Plaintiff's ex-wife were coordinating to harm a common enemy: Plaintiff." Pl.'s Opp'n at 16. He states that during his time in the Dallas USCIS office, "he learned that the leadership there would add items to (and remove items from) employees' personnel files depending on whether a person was in favor with certain cliques in leadership." *Id.* at 15. He argues that this supports his position that USCIS acted in bad faith.

Again, ignoring for the moment all the other issues with relying on information like this to contest Defendants' handling of Plaintiff's FOIA requests, this information is also plainly hearsay. Plaintiff has no personal knowledge that these events ever occurred, assuming they occurred at all. These assertions are wild speculation. If they did occur, Plaintiff provides no foundation for his repeated allegations that records exist related to these events. Plaintiff's assertions that records exist pertaining to these alleged events but were never produced, again, lack the necessary reliable evidentiary support. And again, in a FOIA case, the "issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg*, 745 F.2d at 1485.

Lastly, it bears mentioning that many of the materials cited to support his allegations do not, in fact, support his allegations. For example, Plaintiff is convinced that video footage exists of an incident on January 3, 2021, at the Dallas Fort Worth International Airport. He argues in his

brief that "CBP has failed to turn over this video through a FOIA request despite its existence." Pl.'s Opp'n at 21. He continues, "[m]ultiple officers, when deposed in a separate lawsuit, acknowledged that the video existed, still exists, and has not been deleted." *Id.* He further states, "[o]f course those videos exist and would not be deleted." *Id.*

Examining the materials Plaintiff cited in support of the allegations, however, the Court will see that the materials cited do not support these allegations. In one of the depositions, the deponent testified that although CBP had cameras, the deponent did not know whether there was a taped recording of the incident Plaintiff complained of. *See* Ex. 8 Filed Under Seal at 132:23-24. The same deponent also testified he or she did not know if the cameras actually pointed in the area where Plaintiff was standing. *Id.* at 133:11-13. Another deponent testified that, while he or she believed there were cameras that would have captured the incident, the deponent never tried to see if there was, in fact, video footage of the incident. *Id.* at 277:7-25. Thus, while Plaintiff is convinced that "those videos exist and would not be deleted," his citations do not support those assertions. And even if they did, such assertions would not rebut the presumption afforded to those who actually have performed searches in this case and discovered no video. Suzuki Decl. ¶ 17, ECF No. 31-2 ("Following the request, the FOIA Division contacted DFWOFO who reaffirmed that the video footage is only saved for 90 days, provided the camera is being utilized at the time.").

In sum, Plaintiff's opposition and supporting materials are rife with evidentiary issues. He relies on irrelevant information and hearsay. He does not have the personal knowledge to state much of what is in his declaration. And much of the materials cited do not support his assertions.

## V.    <u>Additional Information for the Court</u>

Defendants have shown that there is no genuine dispute that they have satisfied their FOIA obligations. They have performed adequate searches, applied their withholdings correctly, and have released all reasonably segregable material. As has been repeatedly explained, there is no

obligation to explain why a specific document no longer exists, only an obligation to explain that their search methods were reasonable. Because Plaintiff worked for both ICE and USCIS, he complains that they no longer have many of his employment records from many years ago. He also complains that background investigations and the results thereof have been intentionally withheld from him as well. *See* Pl.'s Opp'n at 27 ("Each of the defendants have, at the very least, made inadequate searches of their records or, at worst, are deliberately withholding relevant responsive records."). Plaintiff is incorrect.

Regarding Plaintiff's employment records, after an employee leaves federal service, the Official Personnel Folder and Employee Medical Records are "normally transferred by Federal agencies to the [National Personnel Records Center] approximately 30 working days following separation." Mellott Decl. ¶ 8, ECF No. 31-8; *see also* 5 C.F.R. § 293.307(a) ("Folders of persons separated from Federal employment must be retained by the losing agency for 30 working days after separation . . . . Thereafter, the OPF must be transferred to the . . . National Personnel Records Center[.]"). If an employee retires, they are transferred within 120 days. *See* https://www.archives.gov/personnel-records-center/civilian-non-archival ("OPFs are retired to the center within 120 days after separation from Federal employment."). Plaintiff is seemingly aware of this, considering how he sent a request to the National Personnel Records Center. *See* Mellott Decl. ¶ 12, ECF No. 31-8 (declaring that NARA treated Plaintiff's request as a request for his Official Personnel Folder, meaning fewer responsive records would be subject to withholding, and declaring that NARA produced to Plaintiff a copy of his Official Personnel Folder).

Further, not all documents in an Official Personnel Folder are permanently retained. *See, e.g.*, 5 C.F.R. § 293.308 ("The employing agency having possession of an OPF shall remove temporary records from the OPF before it is transferred to another agency."); *see also generally*

The Guide to Personnel Recordkeeping, Office of Personnel Management (June 1, 2011), https://www.opm.gov/policy-data-oversight/data-analysis-documentation/personnel-documentation/personnel-recordkeeping/recguide2011.pdf (describing how some records are permanent, some are temporary, and some may never be included in an employee's Official Personnel Folder at all). Records are routinely disposed of pursuant to General Records Schedules, which authorize the destruction of temporary records after specified periods of time. *See* 36 C.F.R. § 1227.10; *see also* https://www.archives.gov/open/grs-dataset. Specifically, the "National Personnel Records Center will destroy records covered by General Records Schedules 1 and 2 in accordance with those schedules without further agency clearance." 36 C.F.R. § 1233.20; *see also* Systems of Records Notice for GOVT-1 General Personnel Records, Office of Personnel Management, https://www.opm.gov/information-management/privacy-policy/sorn/opm-sorn-govt-1-general-personnel-records.pdf.

Thus, although Defendants need not provide an explanation for why ICE, USCIS, or NARA no longer have certain employment records for Plaintiff, there is an easy and readily available explanation—they were either never created, were transferred to the National Personnel Records Center, were temporary, or were disposed of pursuant to routine agency retention schedules.

Throughout this litigation, Plaintiff has been repeatedly accusing Defendants of bad faith. He cites conspiracies and personal grievances from years ago. He accuses Defendants of "deliberately withholding relevant responsive records." Pl.'s Opp'n at 27. In truth, the reality is far less scandalous, as the above information shows. Sometimes records are never created. If they are, many are never retained. In any event a reasonable search was conducted under the FOIA, and that is all that is required.

**CONCLUSION**

The Court should grant Defendants' motion for summary judgment for the reasons in its

opening brief, this reply, and attached declarations and *Vaughn* indexes.


Date:  July 26, 2024
       Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar # 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:        */s/ Sam Escher*
       SAM ESCHER, D.C. Bar # 1655538
       Assistant United States Attorney
       601 D Street, N.W.
       Washington, D.C. 20530
       (202) 252-2531
       Sam.Escher@usdoj.gov

*Attorneys for the United States of America*